Ladies and gentlemen, please be seated. We have five cases on the calendar this morning. Tax case from the Court of Federal Claims, two patent cases, one from the Patent Office, a trade case from the Court of International Trade, and a Veterans' Appeal. The Veterans' Appeal and the Patent Office case are being submitted on the briefs and will not be argued. Our first case is the tax case Amergen Energy Company v. United States, 2014, 5067. Mr. Smith. Good morning, Your Honor. May it please the Court, Paul Smith for the appellant. For many years following the Supreme Court's Crane decision, it was well settled that the purchase price basis of an acquired business asset included from the date of acquisition, not just the money paid for that asset, but obligations transferred from the seller to the buyer as consideration for the transfer of the asset. The government claims, and the court below held, that Congress changed that rule in 1984 when it modified something called the All Events Test, providing that it would not be treated as satisfied until something new called economic performance had occurred. But that argument simply doesn't work because it's undisputed in this case that the term All Events Test was never used prior to 1984 to refer to the issue at hand, which is the calculation of purchase price basis. It was always exclusively a test modifying the accrual method of counting and saying whether and when accrual method taxpayers could accelerate deductions, including capital expenditures, based on the fact that they had simply become obligated to make those expenditures. Mr. Smith, isn't there a special statute for nuclear decommissioning costs providing for a deduction when economic performance decommissioning occurs during the taxable year, and wouldn't you be getting a double benefit if we changed the basis and let you take a deduction as well? No, Your Honor. There is a statute that says, a separate provision that says, that the owners of nuclear plants may put money away to pay for decommissioning in the future, and it has certain tax advantages. You can get a deduction when you put the money in. It's got special tax rates while the money sits in that fund. You're talking about 468A-A. Yes, Your Honor. But the deduction I'm talking about is in addition to A. Your Honor, I'm not sure what you're referring to. In addition to any deduction under subsection A, it's allowable as a deduction of the amount of the decommissioning costs with respect to which economic performance occurs. It's dependent upon economic performance. Yes. That's a business deduction that you take when you're doing the decommissioning down the road. Right. But 468A-A has absolutely nothing to do with calculating the basis in the ownership of the plant while the money is sitting there before decommissioning occurs. If we, Amergen, had built these three plants, the basis would be the amount of money expended to build the plants, and they would be fully depreciable using that basis. Instead, we bought the plants, and virtually all of the consideration that we provided was the assumption of the obligation to do decommissioning in the future. But the assumption of the obligation hasn't been materialized yet until economic performance has occurred. Your Honor, the crane rule that has been the rule since the 1940s is that when you get the asset now, you need to have full recognition of the cost. And to go back to the point you were making, I think it's important to understand, if we get these depreciation deductions, there will not be a second deduction when we then do the decommissioning. It's all about timing, whether or not we can get depreciation now or amortization now. But you want a higher basis. Yes, in order to get the deductions while the building is still experiencing wear and tear, and while we have the asset, when we should be getting depreciation deductions. But if we get those deductions, that means that the decommissioning costs, when we then spend the money in 2040, will not be a deductible business expense. 2040 or 2106 or sometime thereof in the future. Yes, Your Honor. So you'd like to take deductions now, perfectly reasonable given the time value of money, for costs that you're likely to incur potentially 100 years from now? No, we'd like to have depreciation and deductions for the basis of the value. Well, the entire basis analysis is hinged upon a cost that you intend to occur when you decommission. So it's an expense you intend to spend. I don't see how this is any different from wear and tear on my house or anything else. The only difference is, in this case, you're required, when you purchase these plants, to accept in a contract term potential future decommission costs, not definitive future decommission costs in terms of a specific date upon which it must be decommissioned, because here this case very much shows the liquidity of the date, nor does it specify an amount of decommission costs. We're just supposed to rely on your assertion of $1.6 billion. Well, Your Honor, that whole issue was not addressed below the question of the exact amount. There are formulas for determining that that can be addressed on remand. The only question before the Court now is whether it makes sense under the Code and whether Congress in 1984 changed the law to provide that when we acquired this asset, we're treated as having paid $93 million for $900 million worth of security. But don't you agree that Section 461 on its face contains no limitation, that your argument hinges on us accepting the fact that we should read a limitation in based on a legislative intent to codify the judicial version of this All-Events Test? Yes, but it uses a term of art that is essentially meaningless unless you look at what the All-Events Test was at the time Congress passed that statutory amendment. There was a regulation that was built on the judicial interpretations, and it said the All-Events Test is about accrual of deductions by accrual method taxpayers. That's in the addendum. Congress then grabs that term and puts it into the statute. All of the legislative history is fully consistent with the proposition that the only problem they were addressing was the abuse of the accrual method of taxpaying to accelerate obligations merely because they were obligations. It's quite clear you would like me to use the legislative history to modify the otherwise clear language of the statute. That's exactly what you're asking me to do. No, Your Honor, that's the precise opposite of what I'm asking you to do. I think the statute unambiguously supports us because Congress chose a term of art that has nothing to do with the way that the IRS is now trying to Certain liabilities not incurred before economic performance. And then you go through and read it. I don't see why this doesn't include future decommissioning costs that you may or may not incur. I don't understand why. Because the term All-Events Test was about use of the accrual method to accelerate future expenditures. We are not asking to deduct the future expenditures. We're asking to get the full cost of the plants and the securities that we receive recognized as basis so that we don't have this irrational, weird world where we have a $93 million basis on $900 million worth of securities and three nuclear plants. Is it your view that because Congress used the phrase All-Events Test in the statute that Congress was therefore bound and confined to use the All-Events Test in the same way that the Supreme Court had contemplated it? It was using the term that came from the tax cases and the tax regulations. But I guess theoretically, I guess my question is theoretically, if Congress wanted to, it had the power and discretion to expand the context of how the All-Events Test had previously been used and understood in the court. Of course, Your Honor, it had that power. If it had written a statute that said All-Events Test shall henceforth also apply to the calculation of purchase price basis, then we wouldn't have an argument. But they didn't say that. They said the All-Events Test shall not be met until economic performance has occurred. That's the operative language of the provision. So it's a narrowing of the test, an addition of a requirement, not a broadening of the test to some other context. Well, I guess the concern I have with your position is that it didn't appear to me that Congress necessarily just plucked this name of a doctrine and inserted it into a statute. It also went a little further and actually gave some meaning to what it understands the All-Events Test to be in this subsection in 461H4, where it says, For purposes of this subsection, the All-Events Test is met with respect to any item. If all events have occurred which determine the fact of liability, an amount of such liability can be determined with reasonable accuracy. So when it says the All-Events Test is met with respect to any item, I guess any item except decommissioning liabilities? Well, Your Honor, that phraseology, like the phraseology in 461H1, doesn't justify, I don't believe, the conclusion that they were suggesting that the All-Events Test would have any greater scope. The All-Events Test, wherever it applies, has these two prongs, which are the ones in 4, which are the ones that already existed, and a third one is added in H1. But they don't, in either of those sentences, suggest that they're applying the All-Events Test to some greater scope. And the legislative history and the regulations all are completely consistent with our interpretation, which I think is the plain meaning of the statute. The odd thing about this case is the IRS, the government, they've got a statute that doesn't support them. They've got a regulation that they put out in 1992 that doesn't apply to anybody but accrual method taxpayers, because that was the problem that this statute was addressing. So should I read 461H4 to be, the All-Events Test is met with respect to any item, with respect to the deduction of an expense? The deduction of future expenses, where the accrual method is what's at issue. That's what the All-Events Test was. It was part of the rules governing the accrual method of taxpaying, of accounting. And either they could accelerate a business expense and get a deduction, or they could accelerate a future capital investment and get a basis and start depreciating an asset they didn't yet have. I guess I'm just wondering, how would you want us to translate the phrase with respect to any item in 461H4? The All-Events Test, wherever it applies in any context, has those two prongs plus the third one that's added over in one. But I don't think that with respect to item can be, any item can fairly be read as saying the All-Events Test applies to completely different things that it never applied to before. How would you know which of the many thousand things in the code it now applies to? They don't tell you any of that. It is a term of art. And when Congress chooses a term of art, there's a strong presumption that they're doing that for a purpose, which is to tell you this is the thing we're dealing with. They can obviously change the meaning of the term of art, but just putting with respect to any item in there isn't an indication. Is deference owed here? Deference to the agency? Your Honor, I think the argument for deference here is extraordinarily weak. First of all, I think the statute has a clear meaning. Second of all, if it's ambiguous, you look at the legislative history, all of which supports us. It's all about premature accruals. There is no reference to purchase price basis or changing the crane rule in the legislative history. And then you look at what the IRS itself did. Its regulations all deal with accrual method abuse. They don't have anything to do with cash method taxpayers because that's not the issue that the IRS itself understood Congress to have been addressing. And so what happens then in the late 90s is these nuclear plants start being bought and sold and most of the consideration is assumed obligations and the IRS decides, well, maybe we can take this rule and put it over in this entirely different context, but they've never put that interpretation in a regulation. They basically just started doing private letter rulings and saying that this is what we now read the statute is doing, but the argument for deference under those circumstances, given that it contradicts the regulations, contradicts the legislative history, and I submit contradicts the statute, is extremely weak. Would you like to save the remainder of your time for a couple? I appreciate the suggestion. Mr. Catterall.  Arthur Catterall of the Justice Department on behalf of government. The court below correctly held that Amergen may not include estimated future decommissioning costs in its basis for the three nuclear power plants it acquired in 1999 and 2000. First, the court correctly held on multiple grounds that Amergen may not treat those costs as having been incurred prior to the time economic performance occurs with respect to those costs as provided in Section 461H. The court began by correctly holding that the plain language of Section 461H subjects those costs to the economic performance rule. Mr. Smith says it doesn't apply to this situation. Well, let's go ahead and look at the language. Okay. For purposes of this title, i.e., the internal revenue, the entire Internal Revenue Code, in determining whether an amount has been incurred with respect to any item during any taxable year, the all events test shall not be treated as met any earlier than when economic performance with respect to such item occurs. And then Subsection H4 says, for purposes of this subsection, i.e., Section 461H, the all events test is met with respect to any item if all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy. So what we have here, Amergen claims that for a purpose of the Internal Revenue Code, i.e., determining its tax basis, an amount, almost $1.7 billion here, was incurred, i.e., through an assumption of liabilities, with respect to an item decommissioning costs during two taxable years, 1999 and 2000. So, under the plain terms of Section 461H1, in determining whether, for tax purposes, Amergen incurred the claimed amount of costs in 1999 and 2000, the all events test of Section 461H4, a provision that, like Section 461H1, is phrased in terms of any item, is not met until economic performance occurs with respect to these costs. And in their briefs and in the primary argument here, Amergen repeatedly claims that Section 461H expressly precludes the economic performance rule from applying to obligations assumed in connection with the purchase of an asset. And instead of pointing to any language in the statute to that effect, they rely heavily on a footnote in a Supreme Court case, a case that did not even involve Section 461H, in which the Court simply stated the obvious, Section 461H imposed limits on the application of the judicially created all events test, i.e., by providing that the test is not met any earlier than when economic performance occurs. How do you deal with Crane? Well, I just don't see where Crane is a problem because, to begin with… Well, if this case was before 1984, then you would apply Crane to the facts of this case, right? Sure, yeah, and absolutely, yes. And so the idea here is that all events test is a technical term of art for purposes of tax law. But I think it's important to note that whatever – if there was a separate test under Crane as opposed to the all events test, maybe it was separate in name, but in substance it's the exact same test. The question is whether the future obligation is – the amount thereof is determinable with reasonable accuracy. That's the test under Crane. It's the test under the old all events test. But did Crane have a provision that requires the economic performance? No, no, no. See, but that's the issue, right? The 1984 amendment to 461 added economic performance, and that's the reason they're not able to adjust. And so I think Judge Chen's point is if Crane were the law of the land and economic performance were not required, they'd be able to do exactly what they wanted. Right, and in this narrow sense, Congress effectively added for accrual basis taxpayers, added this economic performance requirement. So Congress changed Crane to add additional requirements. With respect to accrual basis taxpayers, yes. I guess the other side was saying in their brief something about when it comes to purchase price basis, can these issues come up whether you're a cash method or accrual method, and yet now we're trying to somehow force it 461H, which is for only accrual methods into an understanding of what to do here. Well, I don't understand why, I mean, Amergen's argument is that because the Crane doctrine applied equally to cash basis and accrual method taxpayers, Congress can't change the Crane rule with respect to accrual method taxpayers. And I think the implication is Congress can't do that unless it also makes the same change with respect to cash basis taxpayers. In our brief, we invited Amergen to cite a principle of statutory construction that would require that result. And in their reply brief, they didn't do so. They just proclaim, based on what their view of logic and common sense is, that the IRS's position is unsustainable. And just saying that is so doesn't make it so. So I just don't think that – I think the whole Crane argument is really a red herring. It just doesn't – it doesn't overcome the plain language of the statute. And again, as counsel has stated – Does Crane still get applied or is Crane gone now? No, Crane is certainly still there for cash method taxpayers. And the thing is, you know, you can say, well, theoretically, Congress has sort of tweaked the Crane rule. But in practicality, the Crane rule was, you know, the same as the all events test. And so I just don't think that there's too much being made of the Crane rule. And also, Crane arose in the context of, you know, purchase price mortgages. And that rule would – the Crane rule is – the result in Crane is exactly the same under the economic performance requirement because when you receive property and you incur an obligation with respect to that purchase, economic performance is deemed to occur when you receive the property. You haven't mentioned 468A, but isn't that key to your position? Well, it certainly is. The specific controlling the general? Well, it certainly indicates that Congress thought that nuclear decommissioning costs should be subject to the economic performance requirement. And provided for a deduction? Right, right. And it gives you an upfront deduction for a contribution to a qualified fund. Then down the road, when you use those funds for the decommissioning, when you withdraw the money, you recognize income. And then when you make the expenditure, you get a deduction because you are economically performing. So it's certainly consistent with everything that we're saying. And I think it's important to note that Amergen's position is, well, just by using the words all events test, Congress must have imported wholesale, every aspect, scope, et cetera, of that test into the statute. And as we pointed out, if Congress had wanted to do that, it very easily could have done that. And a perfect example is when it codified the economic substance doctrine just four or five years ago, in section 77010, where the statute defines the economic substance doctrine in terms of the common law doctrine under which, et cetera, et cetera, et cetera. But you don't expect Congress to have to say that every single time it adopts some common law doctrine, for it to actually use the magic words, you know, we use this term as it's understood in the common law prior to the enactment of this. I think it's... That's never been the law, to understand whether or not Congress has codified it. Well, I would just say this. Well, I would just say this. The council has said, well, you know, Congress could easily have, you know, limited or could have easily said this is limited to deductions and doesn't apply to purchase price basis. Well, the same goes the other way. They very easily could have said that, you know, we are... The all events test is, you know, based on... We are importing the all events test from, you know, from existing case law. But they didn't do that. And so... Not only did they not do that, isn't it clear that they meant to explain the precise contours of the all events test, even in a way that would be inconsistent with existing case law, because they added an additional element. Sure. Yeah, right. Exactly. They added... Just like Congress tweaks the common law economic substance doctrine, they did the same with the all events test. And in addition to adding this economic performance requirement, you know, the language of the statute is broad and not limited. And it's, you know, for purposes of this title, for purposes of the Internal Revenue Code, any item is subjected to this rule. So, and then... So, you know, the analysis can end there, just on the language of the statute. The court also looked at the legislative history and concluded that it confirmed its view. And the legislative history, it does confirm that, the any item view, because it expressly says that this new rule applies to both non-capital items, i.e. deductible expenses, and capital items. It expressly says that. And... What am I supposed to take away from that? Because the vast bulk of the legislative history statements I read seemed to be consistently sprinkled with the notion of deducting an expense. Sure, sure. And if we look for the word deduction of an expense, you would see that many, many, many more times than this capital. And that's certainly, you can certainly draw the inference that that was their main concern. Because that's what the all events test was used for. Well, but the fact that they are also now applying this to capital items indicates that they are not, that Congress did not mean to limit the all events test to where it previously applied. You know, again, maybe deductible expenses... Because the all events test was never applied to capital items? I'm sorry? Because the all events test had never previously been applied to capital items? Well, the all events test did apply. I mean, if you look at the old regulation that embodies the all events test, and I think we cited this in our brief, you know, the first sentence cites the all events test, and then it says, of course, you're still subject to capitalization rules. So, even if your expenditure meets the test, if it's a capital expense, you don't get to deduct it right now. So, why should there be a difference between a capital expenditure, you know, in the nature of a betterment or improvement, as opposed to a capital expenditure in the form of purchasing a wholly new plant? American never explains why there should be a distinction between those two. Congress clearly did not see a distinction between those two. The related cases says there are no other related cases. I mean, this seems like an unusual case. I mean, in this case, the taxpayers repeatedly asked for advice from the IRS and repeatedly told, no, this would not be allowed prior to their purchase, right? That's my recollection. And in 2009, 468 was amended such that now even these taxpayers are taking advantage of the new tax benefits accorded to 468 because it doesn't have to have a cap on it anymore, right? Right, and they've got a $450 million deduction. Right, that was the double-dipping that Judge Flory alluded to in the very beginning when he was talking to your opposing counsel. So, I guess my question is, is there any reason to think there are going to be any more of these cases? Is this a one-time, you know, they're going for the Hail Mary pass because they've got $1.6 billion they'd like to advance now for deductibility purposes. $1.6 billion, I think I said that. Is this a Hail Mary or are there other cases? Is this something that matters? Well, you saw that there was an amicus brief filed by Entergy Corporation. So, they have the same issue. So, I don't know how many. When you say they have the same issue, did they actually already file to amend? Well, I know they had the issue. Or are they just looking to get this result and then they'll file to amend? Well, they had this issue earlier and went to the tax court and it settled. I see.  So, yes, this is not, you know, there are other taxpayers and there are certainly other years that are going to be affected. I understand. Do you have a final thought, Mr. Catterall? The final thought, I guess, would be that the plain language of the statute should end the inquiry. And so, all of these hacks on the regulations are irrelevant if the court just follows the plain language of the statute. Thank you. Mr. Smith, I trust that what you're wearing on your arm didn't result from dueling with the IRS. No, Your Honor. Pure clumsiness, I'm afraid. We'll give you a full three minutes. Thank you so much. I think, to start, Mr. Catterall acknowledged that we would have won this case if it had occurred in 1983 before this statutory change occurred. And it's also, I think, acknowledged that the all events test would not have applied to this transaction in 1983 because it didn't have anything to do with this transaction. There was a test called the non-contingent test, which was similar in those days. And the real question is whether both got changed or simply the all events test got changed in 1984. And I would submit that it's perverse to suggest that Congress, given that reality, given the fact that this term had a well-understood meaning, intentionally set out to broaden the all events test to cover this issue of calculating basis by using the language that is in 461. It's not as if they said, for purposes of this title and determining whether an amount has been incurred with respect to any item, the all events test should be used for everything. They simply said it shall not be used until some additional requirement has been added. It is rather strange, I think, to read a restrictive sentence as adding breadth rather than narrowing the test and making it more restrictive. And let me address, if I could, the issue of the references to capital items in the legislative history. The all events test always has had a relevance to future obligations, which accrual method taxpayers tried to accelerate. Most of those would be ordinary business deductions, which they would obligate themselves to pay in 2020 and try to deduct now. But they could also be future capital expenditures, which they would obligate themselves to pay and try to capitalize now, based merely on the fact that they were obligated to pay in the future and they're using an accrual method of accounting. This case is the opposite. This is a case where it's not some future transaction we're trying to move to the present using accounting methods. This is a transaction that's already occurred. We have the asset, and it's a question of calculating what the cost of that asset was. And the crane rule, which had nothing to do with the all events test, says you do take into account, once you have the asset and the transaction has closed, you take into account not just cash you paid but obligations you assumed. Otherwise, you get this. You're talking about the cost that you incurred, but it's a liability, right? Yes, it's assumed liability. 461H2B talks about the liability occurring as taxpayers provide property or the services. Well, yes, that's one of the ways in which the economic performance rule is laid out in the statute, but it doesn't apply to the calculation of basis. It applies to deductions and the acceleration of future expenses. That is, I think, the only fair reading. It is the reading the IRS gave the statute in its own regulation. Thank you, Your Honor. Thank you, Mr. Smith. This is a taxing case, and we will take it under advisement.